IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**CLARK CONSTRUCTION GROUP, LLC**

    7500 Old Georgetown Road
    Bethesda, Maryland 20814,

       *Plaintiff,*

   v.

**PERKINS EASTMAN DC, PLLC**

    One Thomas Circle, Suite 270
    Washington, D.C. 20005,

       *Defendant.*

Civil Action No.

## **COMPLAINT**

This is a civil action for damages and other relief, brought by Plaintiff Clark

Construction Group, LLC, ("Clark Construction") against Defendant Perkins Eastman

DC, PLLC, ("Perkins") pursuant to District of Columbia common law.

## **THE PARTIES**

1.    Plaintiff Clark Construction is a limited liability company registered in the

State of Maryland and duly licensed and qualified to do business at all times relevant

herein in the District of Columbia as a General Contractor and Construction Manager,

with its principal place of business in Bethesda, Maryland, and its members citizens of

Maryland.

2.    Defendant Perkins is a professional limited liability company registered in

the District of Columbia and, on information and belief, duly licensed and qualified at all

13769505.4

times relevant herein to provide architectural and engineering professional design services in the District of Columbia under its contracts with Clark Construction, with its principal place of business in the District of Columbia, and on information and belief its members citizens of the District of Columbia and New York.

## SUBJECT-MATTER JURISDICTION

3.      This Court has subject-matter jurisdiction over the action pursuant to 28 U.S.C. § 1332, *et seq.*, as the action is between citizens of different states and the amount in controversy exceeds the jurisdictional minimum of $75,000 exclusive of interest and costs.

## PERSONAL JURISDICTION

4.      This Court has jurisdiction over the Defendant Perkins based on its contacts within the forum including: a) it is a resident of the District of Columbia; b) it maintains its principal office in the District of Columbia; c) it contracted to supply professional services in the District of Columbia; d) it caused injury and damages in the District of Columbia by its acts or omissions both inside and outside the District of Columbia; e) it derived substantial revenue from services rendered in the District of Columbia; and f) as otherwise authorized by law and consistent with the U.S. Constitution.

## VENUE

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, *et seq.*, as it is the judicial district in which: a) Defendant Perkins resides; b) a substantial part of the events or omissions giving rise to the claim occurred; and c) a substantial part of the property that is the subject of the action is situated.

2

## FACTS

6.      Clark Construction entered into a Design-Build contract with Wharf District

Master Developer, LLC, c/o PN Hoffman & Associates, Inc., ("Owner") to act as the

Design/Builder on The Wharf Project ("The Wharf" or "Project") on or about March 3,

2014 for Phase 1 and the Tax Increment Financing ("TIF") portions of the development.

As such Clark Construction was to engage others for the purposes of designing and

constructing Phase 1 and the TIF portions of The Wharf for a fixed price.

7.      The Wharf is a large, mixed-use project located at the District of

Columbia's Southwest Waterfront between Maine Avenue, SW; 6th Street, SW; the

Maine Avenue Municipal Fish Market; and the historic Washington Channel.  Phase 1

and the TIF portions of the Project include, without limitation, residential apartments and

a music hall at Parcel 2, office space at Parcel 3a, retail and restaurant facilities, a multi-

use cultural facility, underground parking structures and wet utility rooms, a jetty

terminal, WMATA access and facilities, cisterns, The Dockmaster and kiosks, piers,

public parks and facilities, and public open spaces.

8.      On or about April 15, 2014 Clark Construction and Perkins entered into

separate written contracts whereby Perkins, as the Designer, was to provide and

coordinate design services for Phase 1 and the TIF portions of The Wharf ("Phase 1

Design Services Agreement" and "TIF Design Services Agreement" respectively;

collectively the "Design Agreements").  A true and correct copy of the Phase 1 Design

Services Agreement is attached hereto as **Exhibit A** and incorporated herein by this

reference.  A true and correct copy of the TIF Design Services Agreement is attached

hereto as **Exhibit B** and incorporated herein by this reference.  Clark Construction

3

13769505.4

thereafter performed its duties relevant to Phase 1 and TIF portions of The Wharf as the Design/Builder while Perkins performed as the Designer.

9.      Perkins was to supply architectural and engineering design services to Clark Construction and coordinate the work of all other design consultants, whether in privity of contract with Perkins or otherwise, by preparing Construction Documents to be delivered to Clark Construction at various levels of completion and detail in accordance with an agreed upon schedule and the Design Agreements.  Deliveries of accurate, complete, and correct Construction Documents at the designated completion thresholds and times set were required for Clark Construction to be able to complete the work in an efficient and timely manner.

10.      Between approximately May 2014 and September 2015 Perkins supplied design packages of various completion and detail levels to Clark Construction.  The designs that made up these deliverables were then amended, revised, and updated through the development and construction process.

11.      Excavation began in or around October 2014 for portions of the Phase 1 and the TIF segments of The Wharf, and construction of the actual structures was under way beginning in our around July and August of 2015 under Clark Construction's direction pursuant to Perkins' Design Documents.  Clark Construction achieved substantial completion of Phase 1 and the TIF portions of The Wharf under contract with the Owner in or around October 2017.

12.      As construction proceeded, Clark Construction incurred significant damages as a result or errors and omissions by Perkins in the performance of its

13769505.4

professional services in connection with the Design Agreements and the Project, including without limitation, the following:

a.    Perkins' design and coordination of the design disciplines related to the structural columns contained errors and/or omissions in that they did not accommodate the architectural layouts and conflicted with other building components and finishes such as walls, doors, and cabinets resulting in increases of material, labor, and equipment costs and other costs such as additional engineering and construction modifications;

b.    Perkins' design and coordination of the design disciplines related to exterior retail doors contained errors and/or omissions such that the doors would be inoperable resulting in additional material, labor, and equipment costs and other costs such as additional construction modifications;

c.    Perkins' design and coordination of the design disciplines related to concrete beams contained errors and/or omissions such that code required clearances were not possible to achieve resulting in additional material, labor, and equipment costs and other costs such as additional engineering and construction modifications;

d.    Perkins' design and coordination of the design disciplines related to the built-up slab contained errors and/or omissions such that code required clearances were in question and doors already ordered and paid for would not fit resulting in additional material, labor, and equipment costs and other costs such as additional engineering and construction modifications;

5

e.      Perkins' design and coordination of the design disciplines related to structural beams contained errors and/or omissions such that coordination with the curtainwalls required modifications of building components resulting in additional material, labor, and equipment costs and other costs such as additional engineering and construction modifications;

f.      Perkins' design and coordination of the design disciplines related to terrace doors contained errors and/or omissions such that ADA compliance issues arose, particularly at thresholds to said doors, resulting in additional material, labor, and equipment costs and other costs such as additional engineering and construction modifications;

g.      Perkins' design and coordination of the design disciplines related to storm water cisterns contained errors and/or omissions such that the systems required extensive revision to achieve the necessary capacity resulting in additional material, labor, and equipment costs and other costs such as additional engineering and construction modifications;

h.      Perkins' design and coordination of the design disciplines related to structural rebar requirements contained errors and/or omissions such that estimated quantities needed for portions of the Project were inaccurate resulting in additional material, labor, and equipment costs and other costs such as additional engineering and construction modifications;

i.      Perkins' design and coordination of the design disciplines related to pier embeds contained errors and/or omissions such that the original embeds and surrounding concrete and finishings were chipped and removed to install

6

13769505.4

new and correct embeds resulting in additional material, labor, and equipment costs and other costs such as additional engineering and construction modifications;

j.      Perkins' design and coordination of the design disciplines related to foundation piles contained errors and/or omissions such that the quantity of piles called for by the original construction drawings was understated resulting in additional material, labor, and equipment costs and other costs such as additional engineering and construction modifications;

k.      Perkins' design and coordination of the design disciplines related to stairs, stair landings, and loading docks contained errors and/or omissions such that the integration with abutting and adjacent conditions and components was not within acceptable tolerances resulting in additional material, labor, and equipment costs and other costs such as additional engineering and construction modifications;

l.      Perkins' design and coordination of the design disciplines related to windows and curtainwalls contained errors and/or omissions such that the integration with abutting and adjacent conditions, components, and cladding was not within acceptable tolerances resulting in additional material, labor, and equipment costs and other costs such as additional engineering and construction modifications; and

m.      Perkins' design and coordination of the design disciplines related to the acoustical design and isolation including, without limitation, that of the theater and concert hall contained errors and/or omissions such that the systems'

7

performance was not within acceptable tolerances resulting in additional material, labor, and equipment costs and other costs such as additional engineering and construction modifications.

13.    Due to the level of detailing of the delivered design documents, or lack thereof, the untimely delivery of design documents and services, and deficient organization and coordination of the design documents and disciplines, the errors and omissions could not have been discovered prior to construction of the conditions, adjacent conditions, and/or incorporation of finishes.  The errors and omissions complained of herein did not arise and were not known, knowable, discovered, discoverable, appreciated, or appreciable until various points within the past three years.  It remains possible and likely that errors and omissions will continue to arise and become known, discovered, and appreciated in the future as discovery in this matter proceeds including, without limitation, expert discovery.

14.    As a result of the acts, errors, and omissions of Perkins, including the conduct described in the proceeding paragraphs, Clark Construction has suffered and will continue to suffer increased costs, expenses, delay, and damages for additional engineering, materials, labor, equipment, delay, disruption, repairs, rectification, loss of efficiency, unplanned and additional demobilization and remobilization, and acceleration in an amount to be proven at trial but in the aggregate in excess of $5,000,000.

15.    Clark Construction repeatedly demanded that Perkins engage in the contractual Dispute Resolution Procedures, including engaging in mediation.  Perkins has refused all such attempts.

13769505.4

## COUNT I

## **Breach of Written Contract**

16.     Clark Construction incorporates herein by reference each of the allegations contained in the proceeding paragraphs.

17.     Clark Construction and Perkins entered into the Design Agreements previously attached hereto as **Exhibit A** and **Exhibit B**.

18.     Clark Construction has performed and/or substantially performed all conditions, covenants, and promises under the Design Agreements to be performed on its part, except that which has been waived, prevented, or excused by Perkins' actions or failures of performance.

19.     Perkins breached and/or anticipatorily repudiated the Design Agreements by its actions and failures to act as described herein, including Paragraph 12, and failing to correct or provide timely corrections to those actions and failures to act as described herein, including Paragraph 12.

20.     Perkins further breached and/or anticipatorily repudiated the Design Agreements by its actions and failures to act including, without limitation:

a.     Failing to achieve a design allowing the Project to be constructed within the Design Control Budget inclusive of the allowable minor variances;

b.     Failing to perform, or to perform in a reasonably timely fashion, all redesign services to correct any and all errors, omissions, and inconsistencies in the design materials at no cost to Clark Construction;

9

c.      Failing to employ the care and skill ordinarily used by members of the design profession performing similar services under similar conditions and complexity at the same time and locality of the Project;

d.      Failing to provide, or provide in a reasonably timely fashion, written or graphic interpretations of the Construction Documents necessary for the proper execution or progress of the Construction Work with reasonable promptness;

e.      Failing to provide, or provide in a reasonably timely fashion, requested written interpretations on all matters relating to the execution of the Construction Work or the interpretation of the Construction Documents so as not to delay the progress of the Work;

f.      Failing to review, approve, or take other appropriate action upon submittals to confirm conformance with the Design Services within a reasonable time so as not to delay the progress of the Construction Work;

g.      Failing to perform its work in strict accordance with the time periods set by the Design Agreements and the Project Schedule resulting in delays, and failing to cure such delays and deliver recovery plans for same in a timely fashion; and

h.      Failing to properly coordinate all design consultants and the work of the various design disciplines.

i.      Failing to complete its work under the Design Agreements and prematurely terminating its engagement under the Design Agreements.

13769505.4

j.      Refusing to engage in the contractual alternative Dispute Resolution Procedures set forth in the Design Agreements, including ignoring offers to mediate disputes by Clark Construction.

21.     As a result of Perkins' breaches of the Design Agreements by its actions and failures to act as described herein, including Paragraphs 12, 19, and 20, Clark Construction has suffered, and continues to suffer, damages as described herein including, without limitation, for additional labor, equipment, temporary and permanent materials, repairs, rectification, disruption and loss of efficiency, unplanned and additional demobilization and remobilization, and acceleration.

22.     The Design Agreements provide for recovery of attorneys' fees, expert fees, and court costs in the event suit is brought to enforce the terms of the Design Agreements or determine the rights of the parties under the Design Agreements.  Clark Construction has engaged the services of attorneys to commence and prosecute this action.  Clark Construction, therefore, is entitled to an award of attorneys' fees, expert fees, and court costs in an amount to be determined by the Court.

23.     As a direct and proximate result of Perkins' breaches of the Design Agreements, Clark Construction has been and continues to be damaged in an amount to be proven at trial, which is in excess of the jurisdictional minimum of $75,000 and which Clark Construction currently believes, in aggregate, to be in excess of $5,000,000.  Clark Construction will insert the exact amount of damages herein by amendment when ascertained or according to proof at trial.

13769505.4

## COUNT II

### Professional Negligence

24.     Clark Construction incorporates herein by reference each of the allegations contained in the proceeding paragraphs.

25.     Perkins agreed to provide professional architectural and engineering design services and coordinate the work of the other project designers in the Design Agreements it entered into with Clark Construction.  In so doing Perkins owed a duty to Clark Construction to use such skill, prudence, and diligence to meet the standard of care for a Designer of this type at a design/build project of this type and agreed to perform as such, and by virtue of the forgoing Perkins had a special relationship with Clark Construction.

26.     Perkins also owed an independent duty of care to its clients and the public at large based on industry standards and by virtue of the licensing and regulation of architects and engineers providing design services of the type and nature rendered here for this type of design/build project.

27.     Clark Construction, relying on the Design Agreements for the Project and its special relationship with Perkins, in addition to the duties Perkins owed to Clark Construction as its client and to the public at large, sought, received, and relied on the professional architectural and engineering drawings, memoranda, and other design information developed, coordinated, and/or communicated by Perkins for incorporation into The Wharf.

28.     Perkins developed, communicated, and coordinated such architectural and engineering design services and disciplines, drawings, memoranda, and other

12

design information with the intent and purpose that Clark Construction would use and incorporate them into The Wharf.

29. Perkins failed to meet the standard of care and breached its duty to Clark Construction to meet such standard of care by its acts and omissions as described herein, including, without limitation, as described at Paragraphs 12, 19, and 20.

30. Perkins performed its professional services with a lack of ordinary and due care and failed to comply with the standards generally prevailing in the design profession in the area for which it practices and for a design/build project of this nature. Perkins knew, or should have known, that Clark Construction would suffer property damage, economic, and other losses if Perkins failed to exercise the applicable standard of care and skill in providing its services to Clark Construction, and Perkins owed Clark Construction a duty of care to prevent such losses from occurring and to mitigate, to the greatest extent possible, any losses that did arise.

31. As a direct and proximate result of Perkins' breaches of the Design Agreements, Clark Construction has been and continues to be damaged in an amount to be proven at trial, which is in excess of the jurisdictional minimum of $75,000 and which Clark Construction currently believes, in aggregate, to be in excess of $5,000,000. Clark Construction will insert the exact amount of damages herein by amendment when ascertained or according to proof at trial.

### COUNT III

### Negligent Misrepresentation

32. Clark Construction incorporates herein by reference each of the allegations contained in the proceeding paragraphs.

13769505.4

33.     Perkins itself, and acting through its agents and lower-tier consultants, represented that it had sufficient experience and capacity to meet the obligations under the Design Agreements, and repeatedly assured Clark Construction that, based on its analysis and extensive experience, Clark Construction could rely on the design documents and design schedule which Perkins developed or assisted in developing. Perkins was aware that these documents would be relied on to, among other things, estimate the cost of the work, prepare labor and workforce needs, create an efficient and productive sequence for construction, and construct the structures and project conditions pursuant to the design documents.  Clark Construction reasonably relied on Perkins' representations and assurances in preparing to and continuing to work on The Wharf Design-Build Project because Perkins was providing and coordinating professional architectural and engineering services on the Project.  Clark Construction reasonably relied on representations made by Perkins that it would provide competent professional services upon which Clark Construction would estimate the costs of the work to be performed and plan an appropriate contract schedule and constructible design sequence.  Clark Construction reasonably relied on representations made by Perkins that the design documents could be used to properly construct operable and defect free structures, site improvements, and project conditions.  Perkins intended that Clark Construction would rely on these representations, but as set forth above, those representations were not accurate or true.

34.     Perkins was without reasonable grounds for believing its representations in the documents and services provided and coordinated to be accurate or true, because Perkins had mounting evidence leading it to know it had negligently performed

14

its services called for under the Design Agreements.  Moreover, Perkins should have known and/or had reason to believe that Clark Construction would rely on these representations.

35.    As a direct and proximate result of Perkins' breaches of the Design Agreements, Clark Construction has been and continues to be damaged in an amount to be proven at trial, which is in excess of the jurisdictional minimum of $75,000 and which Clark Construction currently believes, in aggregate, to be in excess of $5,000,000.  Clark Construction will insert the exact amount of damages herein by amendment when ascertained or according to proof at trial.

**PRAYER FOR RELIEF**

Wherefore, Clark Construction prays for judgment against Perkins as follows:

1.    For damages according to proof at trial;

2.    For pre-judgment and post-judgment interest at the maximum amount and rate permitted by law;

3.    For costs of suit herein;

4.    For reasonable attorneys' fees and expert fees pursuant to contract and/or as allowed by law; and

5.    For such other relief as the Court may deem just and proper.

///

///

///

///

///

15

Dated this _9th_ day of March 2018.

Respectfully submitted

By: _____

Jennifer A. Mahar
D.C. Bar # 457357
Smith Pachter McWhorter PLC
8000 Towers Crescent Drive, Suite 900
Tysons Corner, VA 22182
Phone: (703) 847-6300
Fax: (703) 847-6312
jmahar@smithpachter.com

Howard W. Ashcraft (Pending swearing in)
D.C. Bar # 1022750
Scott E. Hennigh (Pending swearing in)
Hanson Bridgett LLP
425 Market Street, 26th Floor
San Francisco, CA 94105
Phone: (415) 995-5073
HAshcraft@hansonbridgett.com
SHennigh@hansonbridgett.com

Attorneys for Plaintiff

13769505.4